PHILIP R. SELLINGER
UNITED STATES ATTORNEY
BY: SARAH DEVLIN
ASSISTANT UNITED STATES ATTORNEY
970 BROAD STREET, SUITE 700
NEWARK, NEW JERSEY 07102
TEL: (973) 645-2700
SARAH.DEVLIN3@USDOJ.GOV

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

**UNITED STATES OF AMERICA**

**v.**

**THE CONTENTS OF THE FOLLOWING ACCOUNTS:**

**JP MORGAN CHASE ACCOUNT ENDING IN 9483 IN THE NAME OF JAE CHOI ATTORNEY TRUST ACCOUNT;**

**BANK OF AMERICA ACCOUNT ENDING IN 4685 IN THE NAME OF SMART LEARNING, INC.;**

**JP MORGAN CHASE ACCOUNT ENDING IN 0711 IN THE NAME OF HEE AH NAM;**

**TD BANK ACCOUNT ENDING IN 2483 IN THE NAME OF HEE AH NAM;**

**TD BANK ACCOUNT ENDING IN 1237 IN THE NAME OF HEE AH NAM;**

**BANK OF AMERICA ACCOUNT ENDING IN 6030 IN THE NAME OF HEE AH NAM;**

**Hon.**

**Civil Action No. 24-**

**VERIFIED COMPLAINT FOR FORFEITURE _IN REM_**

**BANK OF AMERICA ACCOUNT
ENDING IN 6043 IN THE NAME
OF HEE AH NAM;**

**JP MORGAN CHASE ACCOUNT
ENDING IN 9900 IN THE NAME
OF HUDSON ASSET HOLDING
CORP;**

**JP MORGAN CHASE ACCOUNT
ENDING IN 4413 IN THE NAME
OF HUDSON ASSET HOLDING
CORP;**

**JP MORGAN CHASE ACCOUNT
ENDING IN 0353 IN THE NAME
OF VIRTUA EDUCATION, INC.;**

**JP MORGAN CHASE ACCOUNT
ENDING IN 4827 IN THE NAME
OF VIRTUA EDUCATION, INC.;
AND**

**TD AMERITRADE ACCOUNT
ENDING IN 2857 IN THE NAME
OF HEE AH NAM; AND**

**THE REAL PROPERTY LOCATED
AT 125 13TH STREET,
CRESSKILL, NEW JERSEY,**

>            ***Defendants in rem.***

- - - - - - - - - - - - - - - - - - - - - -x


Plaintiff the United States of America, by its attorney, Philip R. Sellinger,

United States Attorney for the District of New Jersey, for its verified complaint

("Complaint") alleges, upon information and belief, as follows:

## I. __NATURE OF THE ACTION__

1. This action is brought by the United States of America seeking the forfeiture of the following properties:

a. The contents of an account at JP Morgan Chase ending in 9483 in the name of Jae Choi Attorney Trust Account ("JCA Trust JPMC Acct 9483");

b. The contents of an account at Bank of America ending in 4685 in the name of Smart Learning, Inc. ("Smart Learning BofA Acct 4685");

c. The contents of an account at JP Morgan Chase ending in 0711 in the name of Hee Ah Nam ("Hee Ah Nam JPMC Acct 0711");

d. The contents of an account at TD Bank ending in 2483 in the name of Hee Ah Nam ("Hee Ah Nam TD Acct 2483");

e. The contents of an account at TD Bank ending in 1237 in the name of Hee Ah Nam ("Hee Ah Nam TD Acct 1237");

f. The contents of an account at Bank of America ending in 6030 in the name of Hee Ah Nam ("Hee Ah Nam BofA Acct 6030");

g. The contents of an account at Bank of America ending in 6043 in the name of Hee Ah Nam ("Hee Ah Nam BofA Acct 6043");

h. The contents of an account at JP Morgan Chase ending in 9900 in the name of Hudson Asset Holding Corp ("Hudson JPMC Acct 9900");

i. The contents of an account at JP Morgan Chase ending in 4413 in the name of Hudson Asset Holding Corp ("Hudson JPMC Acct 4413");

j.    The contents of an account at JP Morgan Chase ending in 0353 in the name of Virtua Education, Inc. ("Virtua JPMC Acct 0353");

k.    The contents of an account at JP Morgan Chase ending in 4827 in the name of Virtua Education, Inc. ("Virtua JPMC Acct 4827");

l.    The contents of an account at TD Ameritrade ending in 2857 in the name of Hee Ah Nam ("Hee Ah Nam TDA Acct 2857"); and

m.    The real property located at 125 13th Street, Cresskill, New Jersey (the "Cresskill Residence")

(collectively, the "Defendants *in rem*").

2.    The Defendants *in rem* are subject to forfeiture to the United States of America, pursuant to 18 U.S.C. § 981(a)(1)(C), which subjects to forfeiture all property, real or personal, that constitutes or is derived from proceeds traceable to bank fraud, in violation of 18 U.S.C. § 1344, and false statements to a financial institution, in violation of 18 U.S.C. § 1014, which are offenses constituting specified unlawful activity, as defined in 18 U.S.C. § 1956(c)(7).

3.    The Defendants *in rem* are additionally subject to forfeiture to the United States of America, pursuant to 18 U.S.C. § 981(a)(1)(A), which subjects to forfeiture property that was involved in a transaction or attempted transaction in violation of 18 U.S.C. §§ 1956 and/or 1957, or a conspiracy to commit such a violation, in violation of Section 1956(h).

## II. <u>JURISDICTION AND VENUE</u>

4.    This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1345 and 1355(a).

-4-

5.      Venue is proper pursuant to 28 U.S.C. § 1355(b)(1)(A) because acts and omissions giving rise to the forfeiture occurred in the District of New Jersey.

6.      With the exception of the Cresskill Residence, the Defendants *in rem* are being held by the United States Internal Revenue Service.

7.      The Cresskill Residence has not been seized but is within the jurisdiction of the Court.  The United States does not request authority from the Court to seize the Cresskill Residence at this time.  The United States will, as provided by 18 U.S.C. § 985(b)(1) and (c)(1):

    a.  post notice of this action and a copy of this Complaint for Forfeiture *In Rem* on the Cresskill Residence; and

    b.  serve notice of this action on the Cresskill Residence's owner(s), and any other person or entity who may claim an interest in the Cresskill Residence along with a copy of this Complaint; and

    c.  file a Notice of Lis Pendens against the Cresskill Residence.

### III.  FACTS

8.      During the period relevant to this Complaint:

    i.   Jae H. Choi ("Choi") was a resident of Cliffside Park, New Jersey.

    ii.  Hee Ah Nam, a/k/a "Iris Choi" ("Nam") was Choi's spouse and a resident of Cliffside Park, New Jersey.

    iii. Individual 1 was Choi's brother.

iv. First Home Bank was a FDIC-insured financial institution headquartered in Saint Petersburg, Florida that has locations in Florida.

v. Hanmi Bank was a FDIC-insured financial institution headquartered in Los Angeles, California that has locations primarily in California.

vi. Cache Valley was a FDIC-insured financial institution headquartered in Logan, Utah that has locations throughout Utah.

vii. Choi was associated with various corporate entities that were used to apply for government loans, or receive loan proceeds, as follows:

  i. Smart Learning Inc. ("Smart Learning"), a New York Corporation, which purports to provide educational services;

  ii. The Homeschool Buyers Club Inc. ("Homeschool Buyers Club"), a California Corporation, which purports to provide curriculums for homeschooling;

  iii. Educloud Inc. ("Educloud"), a New Jersey Corporation, which purports to provide educational services;

  iv. Hudson Asset Holding Corp. ("Hudson"), a corporation whose purported services offered are currently unknown; and

  v. Virtua Education, Inc. ("Virtua"), a corporation whose purported services are currently unknown.

9.     This civil forfeiture action arose from the United States' investigation of Choi for fraudulently obtaining approximately $8.9 million dollars in loans from the United States pursuant to an emergency financial

assistance program created in response to the COVID-19 pandemic.

**A. Background of COVID-19 Loan Program**

10.     The Coronavirus Aid, Relief, and Economic Security ("CARES") Act is a federal law enacted in or around March 2020 and designed to provide emergency financial assistance to the millions of Americans suffering the economic effects caused by the COVID-19 pandemic.  One source of relief provided by the CARES Act was the authorization of up to $349 billion in forgivable loans to small businesses for job retention and certain other expenses, through a program referred to as the Paycheck Protection Program ("PPP").  In or around April 2020, Congress authorized over $300 billion in additional PPP funding.

11.     In order to obtain a PPP loan, a qualifying business must submit a PPP loan application, which is signed by an authorized representative of the business.  The PPP loan application requires the business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications in order to be eligible to obtain the PPP loan.  In the PPP loan application, the small business (through its authorized representative) must state, among other things, its: (a) average monthly payroll expenses; and (b) number of employees.  These figures are used to calculate the amount of money the small business is eligible to receive under the PPP.  In addition, businesses applying for a PPP loan must provide documentation showing their payroll expenses.

12.     A PPP loan application must be processed by a participating lender.  If a PPP loan application is approved, the participating lender funds the PPP loan using its own monies, which are 100% guaranteed by the Small Business Administration ("SBA").  Data from the application, including information about the borrower, the total amount of the loan, and the listed number of employees, is transmitted by the lender to the SBA in the course of processing the loan.

13.     PPP loan proceeds must be used by the business on certain permissible expenses—payroll costs, interest on mortgages, rent, and utilities. The PPP allows the interest and principal on the PPP loan to be entirely forgiven if the business spends the loan proceeds on these expense items within a designated period of time after receiving the proceeds and uses a certain amount of the PPP loan proceeds on payroll expenses.

**B. Overview of the Scheme**

14.     From in or around April 2020 through in or around August 2020, Choi submitted, or caused to be submitted, fraudulent loan applications to approved lenders, including First Home Bank, Hanmi Bank, and Cache Valley Bank, in order to obtain funds through the PPP.

15.     In connection with this fraud, Choi submitted the following PPP loan applications to PPP lenders:

| Name of Business Applicant | Amount Approved | Lender | Approximate Application Date | Status |
|---|---|---|---|---|
| Smart Learning | $3,077,300.00 | First Home Bank | April 3, 2020 | Funded |

| | | | | |
|---|---|---|---|---|
| Homeschool Buyers Club | $2,990,957.50 | Hanmi Bank | April 10, 2020 | Funded |
| Educloud | $2,903,200.00 | Cache Valley Bank | April 23, 2020 | Funded |

**C. Falsified Smart Learning Application to First Home Bank**

16.     On or about April 3, 2020, First Home Bank received a PPP application in the name of Smart Learning seeking a PPP loan in the amount of $3,077,300. The application was submitted in Choi's name and listed Choi as the owner of Smart Learning.

17.     The PPP application submitted to First Home Bank stated that Smart Learning's average monthly payroll was $1,230,925 and that the company had 170 employees.  As purported documentation of Smart Learning's payroll numbers, the PPP application included a payroll summary report listing the purported employees and a purported Employer's Annual Federal Unemployment Tax Return (IRS Form 940) for 2019.

18.     The Smart Learning PPP application to First Home Bank contained the following false and fraudulent information:

a.  The purported Form 940 claimed that Smart Learning had paid employees $13,924,004.28 for 2019. IRS records indicate that Smart Learning filed a form 940 for 2019 reporting approximately $610,000 in payments to employees for 2019.

b.  As part of the application, Choi provided purported January 2020

Smart Learning checking account records from a different financial institution, PNC Bank, falsely indicating an ending balance of approximately $685,000 and hundreds of thousands of dollars in payroll payments and other transactions.  Records obtained from PNC Bank show that this account was not opened until on or about February 8, 2020 and that the largest balance the account held during February and March 2020 was approximately $25,000.

19.     On or about April 20, 2020, Choi emailed First Home Bank to falsely claim that he just told 150 of his Smart Learning employees that they were losing their jobs because the PPP loan had not yet come through, that he had "watched grown men and women crying," and that he sincerely hoped that the First Home Bank employee he was emailing "would never find [themselves] in this kind of situation."

20.     Bank records show that upon receiving the full amount of PPP loan proceeds from First Home Bank on or about April 23, 2020, Choi wired the funds through a Smart Learning account at PNC Bank before sending approximately $2,410,000 to an attorney trust account held in his name at JP Morgan Chase, i.e., JCA Trust JPMC Acct 9483, in two transactions on or about April 24, 2020 and May 6, 2020.  The remaining approximately $640,000 was sent from PNC Bank to another Smart Learning bank account at yet another financial institution.

**D. Falsified Homeschool Buyers Club Application to Hanmi Bank**

21.     On or about April 10, 2020, Hanmi Bank received a PPP application in the name of Homeschool Buyers Club seeking a PPP loan in the amount of $2,990,958.  The application was submitted in Choi's name and listed Choi as the owner of Homeschool Buyers Club.

22.     The PPP application submitted to Hanmi Bank stated that Homeschool Buyers Club's average monthly payroll was $1,196,383 and that the company had 150 employees.  As purported documentation of Homeschool Buyers Club's payroll numbers, the PPP application included a payroll summary report listing the purported employees and a purported IRS Form 940 for 2019.

23.     The Home School Buyers Club PPP application to Hanmi Bank contained the following false and fraudulent information:

a. The purported Form 940 claimed that Homeschool Buyers Club had paid employees $13,924,004.28 for 2019 (identical to that claimed for Smart Learning).  IRS records indicate that Homeschool Buyers Club filed no form 940 or other tax return information for 2019.

b. As part of the application, Choi provided social security numbers and names for 182 employees, along with other information.  According to records maintained by the United States Social Security Administration ("SSA"), only eleven of those individuals' names matched the social security numbers provided.  And for those eleven individuals, the wages provided to Hanmi Bank as part of the PPP

application were higher than those reported to the SSA by Homeschool Buyers Club for the same period.

c. As part of the application, Choi provided social security numbers and names for 167 contractors, along with other information.  According to SSA records, only one of those individuals' names matched the social security numbers provided.  Many of the social security numbers provided by Choi for employees in the PPP application to Hanmi Bank were the same numbers provided for contractors, but were associated with different names.

d. According to SSA records, for dozens of social security numbers provided by Choi to Hanmi Bank, the true holder of the social security number was deceased.

24.    Bank records show that upon receiving the PPP loan proceeds in the amount of $2,990,957.50 from Hanmi Bank on or about May 12, 2020, Choi wired a total of $2,990,000 to JCA Trust JPMC Acct 9483 in two separate transactions on or about May 24, 2020 and June 8, 2020.

**E. Falsified Educloud Application to Cache Valley Bank**

25.    On or about April 23, 2020, Cache Valley Bank received a PPP application in the name of Educloud seeking a PPP loan in the amount of $2,903,200.  The application was submitted in Individual 1's name and listed Choi's brother as the owner of Educloud.

26.    The PPP application submitted to Cache Valley Bank stated that Educloud's average monthly payroll was $1,161,280 and that the company had

-12-

150 employees.  As purported documentation of Educloud's payroll numbers, the PPP application included a payroll summary report listing the purported employees and a purported IRS Form 940 for 2019.

27.    The Educloud PPP application to Cache Valley Bank contained the following false and fraudulent information:

a. The purported Form 940 claimed that Educloud had paid employees $13,924,004.28 for that year (identical to that claimed for Smart Learning and for Homeschool Buyers Club).  IRS records indicate that Educloud filed no form 940 or other tax return information for 2019.

b. The driver's license provided to Cache Valley Bank for verification of Individual 1's identity was a falsified copy of Choi's New Jersey driver's license—both the name and date of birth had been altered from Choi's to Individual 1's.

28.    Bank records show that after receiving the full amount of PPP loan proceeds from Cache Valley Bank on or about April 28, 2020, Choi wired the proceeds to an Educloud account at another financial institution on or about May 5, 2020 before sending approximately $2,902,000 to JCA Trust JPMC Acct 9483 on or about May 6, 2020.

**F.  Choi's Use of PPP Loan Proceeds**

29.    As described in more detail below, bank records show that upon receiving the PPP proceeds from First Home Bank, Hanmi Bank, and Cache Valley Bank, Choi used the proceeds to, among other things, purchase the Cresskill Residence for approximately $970,000, to pay for approximately

-13-

$30,000 in improvements to the Cresskill Residence, and to deposit approximately $3 million into the personal investment account held at electronic third-party broker TD Ameritrade—Hee Ah Nam TDA Acct 2857.

**G. Choi's Arrest and the Subsequent Criminal Proceedings**

30.     On September 2, 2020, United States Magistrate Judge James B. Clark issued a sealed criminal complaint (the "Criminal Complaint") charging Choi with bank fraud, in violation of Title 18, United States Code, Section 1344 and money laundering, in violation of Title 18, United States Code, Section 1957.  (*See United States v. Jae H. Choi*, Mag. No. 20-12360 (D.N.J.)).  On that same date, after finding probable cause that Choi had committed the crimes alleged in the Criminal Complaint, Judge Clark (1) signed a warrant for Choi's arrest, and (2) issued seizure warrants for several bank accounts and a brokerage account.

31.     On September 15, 2020, a federal grand jury sitting in the District of New Jersey issued a ten-count indictment, Crim. No. 20-793 (WJM), charging Jae Choi with bank fraud, in violation 18 U.S.C. § 1344 (Counts One through Four); False Statements on a Loan Application, in violation of 18 U.S.C. § 1014 (Counts Five through Eight); aggravated identity theft, in violation of 18 U.S.C. § 1028A (Count Nine); and money laundering, in violation of 18 U.S.C. § 1957 (Count Ten).

32.     On August 25, 2022 Judge William J. Martini entered an Order of Dismissal dismissing the indictment against Jae Choi due to Choi's death (*See United States v. Jae H. Choi*, 20-cr-793, Docket Number 39).

## IV. **THE DEFENDANTS *IN REM***

### A. **The Accounts Used to Receive Proceeds of the Fraudulently Obtained PPP Loans.**

33.     As described above, Choi acquired approximately $8,971,458 in PPP funds through three separate loans from three separate lenders.

34.     The primary accounts through which Choi funneled proceeds obtained from the fraudulently obtained PPP loan proceeds included the following:

    a.  An account at Hanmi Bank ending in 4248 in the name of The Homeschool Buyers Club ("Homeschool Hanmi Acct 4248");

    b.  An account at PNC Bank ending in 0867 in the name of Educloud, Inc. ("Educloud PNC Acct 0867");

    c.  An account at PNC Bank ending in 1579 in the name of Smart Learning, Inc. ("Smart Learning PNC Acct 1579");

    d.  JCA Trust JPMC Acct 9483; and

    e.  Smart Learning BofA Acct 4685.

### i.    **Homeschool Hanmi Acct 4248.**

35.     Hanmi Bank records show that Homeschool Hanmi Acct 4248 was opened on or about May 11, 2020.  The authorized signer on the account was Jae H. Choi, 3984 Washington Boulevard, Suite 109, Freemont, California 94538, who was listed as CEO, President, and Secretary of The Homeschool Buyers Club.

36.     This account was used to receive approximately $2,990,957 in proceeds from the fraudulently obtained PPP loan referenced above from Hanmi Bank on or about May 12, 2020.

37.     Prior to the transfer of approximately $2,990,957 in proceeds from the fraudulently obtained PPP loan to Homeschool Hanmi Acct 4248, the account had a balance of zero, as of on or about May 11, 2020.  The vast majority of these funds were subsequently transferred to JCA Trust JPMC Acct 9483 via two outgoing wires:  approximately $1,000,000 on or about May 14, 2020, and approximately $1,990,000 on or about June 8, 2020.

**ii.    Educloud PNC Acct 0867.**

38.     PNC Bank records show that the Educloud PNC Acct 0867 was opened on or about April 14, 2020.  The authorized signer on the account was Jae H. Choi, who was listed as Director of Educloud, Inc.

39.     This account was used to receive approximately $2,903,200 in proceeds from the fraudulently obtained PPP loan referenced above from Cache Valley Bank, on or about May 5, 2020.

40.     Prior to the transfer of approximately $2,903,200 in proceeds from the fraudulently obtained PPP loan to Educloud PNC Acct 0867, the account had a balance of approximately $100, as of on or about May 4, 2020.  The vast majority of these funds were subsequently transferred to JCA Trust JPMC Acct 9483 via one outgoing wire:  approximately $2,902,000 on or about May 6, 2020.

**iii.   Smart Learning PNC Acct 1579.**

41.     PNC Bank records show that Smart Learning PNC Acct 1579 was opened on or about February 10, 2020.  The authorized signer on the account was Jae H. Choi, who was listed as President of Smart Learning, Inc.

42.     This account was used to receive approximately $3,077,300 in proceeds from the fraudulently obtained PPP loan referenced above from First Home Bank, on or about April 23, 2020.

43.     Prior to the transfer of approximately $3,077,300 in proceeds from the fraudulently obtained PPP loan to Smart Learning PNC Acct 1579, the account had a balance of approximately $3,745, as of on or about April 22, 2020.  Between on or about April 23, 2020 and on or about May 6, 2020, Choi made several disbursements of these funds.  Namely, approximately $2,410,000 was transferred to JCA Trust JPMC Acct 9483 via two outgoing wires:  approximately $1,000,000 on or about April 24, 2020, and approximately $1,410,000 on or about May 6, 2020.  Approximately $640,000 was transferred to Smart Learning BofA Acct 4685 via one outgoing wire (approximately $500,000 on or about April 24, 2020) and one check (approximately $140,000 on or about April 23, 2020).  Approximately $5,000 was transferred to a TD Bank Account held in the name of Hee Ah Nam via check on or about April 24, 2020.  There was then a transfer from JCA Trust JPMC Acct 9483 back to Smart Learning PNC 1579 in the amount of approximately $7,000 on or about May 6, 2020.

44.     A review of the other deposits into the Smart Learning PNC Acct 1579 revealed that between on or about April 23, 2020 through on or about August 27, 2020, approximately $666,469 was received from Heartland Payment Systems, a Global Payments company.

-17-

**B. Tracing the Proceeds of the Fraudulently Obtained PPP Loans.**

45.     The accounts through which Choi funneled proceeds obtained from the fraudulently obtained PPP loan proceeds included the following:

a.  JCA Trust JPMC Acct 9483;

b.  Hee Ah Nam JPMC Acct 0711;

c.  Hee Ah Nam TD Acct 2483;

d.  Hee Ah Nam TD Acct 1237;

e.  Hee Ah Nam BofA Acct 6030;

f.  Hee Ah Nam BofA Acct 6043;

g.  Hudson JPMC Acct 9900;

h.  Hudson JPMC Acct 4413;

i.  Virtua JPMC Acct 0353;

j.  Virtua JPMC Acct 4827;

k.  Smart Learning BofA Acct 4685; and

l.  Hee Ah Nam TDA Acct 2857.

**i.   Overview of Money Movement.**

46.     Choi used various bank accounts to hold the proceeds of the PPP Loan Scheme.  The proceeds and funds traceable to proceeds generated as a result of the PPP Loan Scheme are forfeitable pursuant to 18 U.S.C. § 981(a)(1)(C). The proceeds of the loans were transferred and laundered from the corporate bank accounts controlled by Choi that received the proceeds of the PPP Loan Scheme ("PPP LLC Accounts") into an attorney trust account held by Choi and a bank account held in the name of a corporate entity controlled by

Choi. From those accounts, the proceeds of the PPP Loan Scheme were transferred into bank accounts held by corporate entities controlled by Choi, as well as personal bank accounts owned by Choi's wife.

47.     Given that Choi laundered the PPP loan proceeds through numerous accounts, the flow of funds involved in the scheme was thus: banks sent PPP loan proceeds to PPP LLC Accounts. The proceeds were then transferred to Choi's attorney trust account.  Choi then sent the proceeds of the PPP Loan Scheme from his attorney trust account to accounts held by either his wife or corporate entities he controlled rather than to accounts held in his name. The PPP loan proceeds were then transferred again from accounts held by either Choi's wife or Choi's corporate entities to other bank accounts held by either Choi's wife or Choi's corporate entities.

48.     As such, proceeds generated by the PPP Loan Scheme were moved to accounts other than the PPP LLC Accounts, to include, brokerage accounts held in Nam's name, bank accounts held in Nam's name, and bank accounts held in the names of corporate entities controlled by Choi.  The proceeds of the PPP Loan Scheme were, in part, eventually used by Choi to purchase a home held in the name of an entity purportedly controlled by Nam, and used to fund an investment account held in Choi's wife's name without her knowledge.  By moving the funds generated by the PPP Loan Scheme in such a fashion, Choi committed a series of violations of 18 U.S.C. §§ 1956 and 1957.  Thus, the transfers of proceeds generated by the PPP Loan Scheme constituted money laundering violations.

49.     Choi laundered the proceeds of the scheme in order to conceal the nature, source, and location of the PPP Loan Scheme.  The Defendants *in rem* are forfeitable as property involved in money laundering.

50.     For example, the following were common forms of money laundering that Choi employed: transfers of funds from PPP LLC Accounts to the JCA Trust Account; transfers of funds from the JCA Trust Account to accounts held in Nam's name; and transfers from accounts held in Nam's name to other bank accounts held in Nam's name.

51.     The majority of the bank and brokerage accounts that constitute the Defendants *in rem* are held in names other than Choi's.  Of the twelve accounts that the government seized pursuant to seizure warrants, only one account was held in Choi's name.  Six of the seized accounts were held in the names of Choi's wife, who, as discussed in more detail below was not involved in the PPP Loan Scheme, and four of the seized accounts were held in the names of companies for which Choi's wife was the signatory.

52.     After proceeds of the PPP loan fraud were disbursed to Choi, more than $1.2 million from the accounts discussed below was used to pay for items that have not been seized or restrained.

**Choi's Wife Told Law Enforcement That She Did Not Control the Bank Accounts Held in Her Name and in the Name of Corporate Entities that Contained Proceeds of the PPP Loan Scheme**

53.     On September 3, 2020, the day Choi was arrested, law enforcement interviewed Nam at her home.  During the interview, Nam told law enforcement that she was unemployed and earned no income.  She also told

law enforcement that she had not received any monies from family members other than Choi, had not received any large inheritances, and did not have any other source of income outside of the monies provided by Choi. Furthermore, Nam told law enforcement that she did not control the household finances. According to Nam, Choi generally paid the bills associated with the household. Nam was unaware that Choi had applied for any PPP loans.  As discussed in more detail below, Nam also told law enforcement that Choi had opened accounts in her name without her knowledge, and that Choi conducted large transactions in accounts for which she was the signatory.

### Choi Used Bank Accounts Held in the Name of His Wife and in the Names of Corporate Entities He Controlled to Launder the Proceeds of the PPP Loan Fraud Scheme

54.    While proceeds of the PPP Loan Scheme were generated in the three PPP LLC Accounts, which were held at various banks, the proceeds of the scheme did not simply remain in the accounts that had received them.  The bank accounts discussed in paragraphs 94-110 below were all involved in money laundering, as they served to conceal the PPP Loan Scheme, and thus are forfeitable to the United States pursuant to 18 U.S.C. § 981(a)(1)(A). Additionally, the bank accounts discussed in paragraphs 94-110 below all contained funds traceable to proceeds of the PPP Loan Scheme and thus are forfeitable to the United States pursuant to 18 U.S.C. § 981(a)(1)(C).

### Choi's Attorney Trust Account

55.    The primary bank account into which Choi transferred the proceeds of the PPP Loan Scheme was an account at JP Morgan Chase Bank

-21-

ending in 9483 held in the name of Jae Choi Attorney Trust ("JCA Trust JPMC Acct 9483").  JCA Trust JPMC Acct 9483 was central to Choi's laundering of the PPP Loan Scheme Proceeds as it was the bank account that received proceeds of the scheme from the PPP LLC Accounts and distributed the proceeds to additional bank accounts.

56.     Choi's use of his attorney trust account made it easier for him to conceal and disguise the nature, source, and location of the PPP loan fraud proceeds.  Placing the PPP loan fraud proceeds into his trust account, which ostensibly held client funds, made the PPP loan fraud proceeds more free from obstruction than they would have been if they had been held in an account not designated as an attorney trust account.  Notably, Choi was not working as an attorney at the time he used the trust account to launder proceeds of the PPP Loan Scheme.  As such, Choi's placement of the PPP loan fraud proceeds in a presumably legitimate trust account lent the proceeds a façade of legitimacy.

57.     The proceeds of the PPP loan scheme were transferred from JCA Trust JPMC Acct 9483 to bank accounts held in Choi's wife's name and the names of corporate entities controlled by Choi.

58.     Choi used JCA Trust JPMC Acct 9483 to transfer approximately $6.8 million in illegal proceeds to accounts and assets, which he used for his own benefit.

59.     Each time Choi made a transfer of more than $10,000 in proceeds or funds traceable to proceeds from the PPP LLC Accounts to JCA Trust JPMC Acct 9483, a violation of 18 U.S.C. § 1957 occurred.  Each time a transfer of

-22-

more than $10,000 in proceeds or funds traceable to proceeds were transferred

from JCA Trust JPMC Acct 9483 to another account or asset, a violation of 18

U.S.C. § 1957 occurred.

**ii.   JCA Trust JPMC Acct 9483.**

60.    JP Morgan Chase records show JCA Trust JPMC Acct 9483 was

opened on or about February 5, 2010.  The authorized signer on the account

was Jae H. Choi, who is listed as a sole proprietor.  As indicated in Table I

below, there were seven wires into JCA Trust JPMC Acct 9483 totaling

approximately $8,378,000 from the aforementioned PPP loan proceeds.  Prior

to the PPP funds deposits, the account had a balance of approximately $6,767,

as of on or about April 23, 2020.

Table I:

| Date | Payee | Payor | Amount |
|------|-------|-------|--------|
| 04/24/2020 | JCA Trust JPMC Acct 9483 | Smart Learning PNC Acct 1579 | $ 1,000,000 |
| 05/06/2020 | JCA Trust JPMC Acct 9483 | Educloud PNC Acct 0867 | $ 2,902,000 |
| 05/06/2020 | JCA Trust JPMC Acct 9483 | Smart Learning PNC Acct 1579 | $ 1,410,000 |
| 05/06/2020 | JCA Trust JPMC Acct 9483 | Smart Learning BofA Acct 4685 | $ 70,000 |
| 05/08/2020 | JCA Trust JPMC Acct 9483 | Smart Learning BofA Acct 4685 | $ 6,000 |
| 05/14/2020 | JCA Trust JPMC Acct 9483 | Homeschool Hanmi Acct 4248 | $ 1,000,000 |
| 06/08/2020 | JCA Trust JPMC Acct 9483 | Homeschool Hanmi Acct 4248 | $ 1,990,000 |
|  |  |  | **$8,378,000.00** |

61.    Between on or about April 24, 2020 and on or about July 22,

2020, approximately $6,817,649 of the funds contained in JCA Trust JPMC

Acct 9483 were withdrawn through various disbursements.  As set forth in

Table II below, which details the most significant disbursements, JCA Trust

JPMC Acct 9483 was used primarily to transfer the proceeds of PPP loans to

two personal bank accounts held in Nam's name, totaling approximately $4,250,100, and to two business bank accounts in the amount of $2,467,000, held in the name of Hudson and Virtua, for which Nam was the sole signatory. Additionally, there were disbursements made to an individual ("Individual 2") in the amount of approximately $30,000, to Jinhak Corp in the amount of approximately $202,000 at a bank located in Korea, to an individual ("Individual 3") in the amount of approximately $62,700, and to an architecture firm ("Architect 1") in the amount of approximately $5,000. The balance in JCA Trust JPMC Acct 9483 on or about September 3, 2020, was approximately $1,369,748.16.

62.    A review of the other deposits into JCA Trust JPMC Acct 9483 revealed that between on or about April 23, 2020 and on or about August 24, 2020, approximately $136,069 was received from Amazon Pay, an online payment service.

63.    Because tainted funds from the PPP LLC Accounts were used to fund this account, the contents of this account are traceable to proceeds of the PPP Loan Scheme and are involved in money laundering. For these reasons, the contents of JCA Trust JPMC Acct 9483 are forfeitable.

Table II:

| Payee | Payor | Amount | Transactions |
|---|---|---:|:---:|
| Hee Ah Nam JPMC Acct 0711 | JCA Trust JPMC Acct 9483 | $ 2,720,000 | 19 |
| Hee Ah Nam BofA Acct 2483 | JCA Trust JPMC Acct 9483 | $ 200,000 | 3 |
| Hee Ah Nam BofA Acct 6030 | JCA Trust JPMC Acct 9483 | $ 1,330,100 | 9 |
| Hudson JPMC Acct 9900 | JCA Trust JPMC Acct 9483 | $ 1,751,000 | 11 |
| Virtua JPMC Acct 0353 | JCA Trust JPMC Acct 9483 | $ 716,000 | 10 |
| Smart Learning BofA Acct 4685 | JCA Trust JPMC Acct 9483 | $ 80,900 | 6 |
| Smart Learning PNC Acct 1579 | JCA Trust JPMC Acct 9483 | $ 7,000 | 1 |
| Individual 2 | JCA Trust JPMC Acct 9483 | $ 30,000 | 1 |
| Jinhak Corp - Industrial Bank of Korea | JCA Trust JPMC Acct 9483 | $ 202,000 | 5 |
| Individual 3 | JCA Trust JPMC Acct 9483 | $ 62,700 | 2 |
| Architect 1 | JCA Trust JPMC Acct 9483 | $ 5,000 | 1 |
|  |  | $ 6,754,700 |  |

### iii. Hee Ah Nam JPMC Acct 0711.

64. JP Morgan Chase Bank records show that Hee Ah Nam JPMC Acct 0711 was opened on or about May 13, 2020. The authorized signer on the account is Hee Ah Nam. This account was opened in order to facilitate the laundering of proceeds of the PPP loan fraud scheme.

65. Nam told law enforcement that she did not conduct any large transactions in the numerous bank accounts held in her name, including in Hee Ah Nam JPMC Acct 0711, and that any transactions larger than $5,000 in Hee Ah Nam JPMC Acct 0711 would have been conducted by Choi.

66. This account was used to receive approximately $2,720,000 in PPP loan proceeds from JCA Trust JPMC Acct 9483. Prior to the incoming funds of approximately $2,720,000, the account had a balance of approximately $500, as of approximately May 14, 2020. Between on or about May 15, 2020 through on or about June 11, 2020, a significant amount of the funds in Hee Ah Nam JPMC Acct 0711 was subsequently transferred to Hee Ah Nam TDA Acct 2857,

an investment account, through a series of withdrawals totaling approximately $2,511,000.  The balance in Hee Ah Nam JPMC Acct 0711 on or about September 3, 2020, was approximately $201,871.

67.     Because tainted funds from the PPP LLC Accounts were used to fund this account, the contents of this account are traceable to proceeds of the PPP Loan Scheme and are involved in money laundering. For these reasons, the contents of Hee Ah Nam JPMC Acct 0711 are forfeitable.

**iv.     Hee Ah Nam TD Acct 2483.**

68.     TD Bank records show that Hee Ah Nam TD Acct 2483 was opened on or about March 5, 2006.  The authorized signer on the account is Hee Ah Nam.

69.     Nam told law enforcement that she did not conduct any large transactions in the numerous bank accounts held in her name, including in Hee Ah Nam TD Acct 2483, and that any transactions larger than $5,000 in Hee Ah Nam TD Acct 2483 would have been conducted by Choi.

70.     This account received approximately $200,000 in PPP loan fraud proceeds from JCA Trust JPMC Acct 9483 and approximately $5,000 from Smart Learning PNC Acct 1579.  Prior to the incoming funds of approximately $205,000, the account had an approximate balance of $307, as of on or about April 23, 2020.  Almost immediately after being deposited in Hee Ah Name TD Acct 2483, the funds were moved from Hee Ah Nam TD Acct 2483 to Hee Ah Nam TD Acct 1237.

71.     Choi used Hee Ah Nam TD Acct 2483 to launder PPP fraud proceeds to other accounts held by Nam in a series of pass-through transactions.  On or about May 6, 2020, approximately $50,000 was transferred from JCA Trust JPMC Acct 9483 to Hee Ah Nam TD Acct 2483.  On the same day, approximately $50,000 was transferred from Hee Ah Nam TD Acct 2483 to Hee Ah Nam TD Acct 1237.  The next day, approximately $50,000 was transferred from JCA Trust JPMC Acct 9483 to Hee Ah Nam TD Acct 2483. On the same day, approximately $50,000 was transferred from Hee Ah Nam TD Acct 2483 to Hee Ah Nam TD Acct 1237.  On or about May 13, 2020, approximately $100,000 was transferred from JCA Trust JPMC Acct 9483 to Hee Ah Nam TD Acct 2483.  On the same day, approximately $100,000 was transferred from Hee Ah Nam TD Acct 2483 to Hee Ah Nam TD Acct 1237. The balance in Hee Ah Nam TD Acct 2483 on or about September 3, 2020, was approximately $662.44.

72.     Because tainted funds from the PPP LLC Accounts were used to fund this account, the contents of this account are traceable to proceeds of the PPP Loan Scheme and were involved in money laundering. For these reasons, the contents of Hee Ah Nam TD Acct 2483 are forfeitable.

**v.    Hee Ah Nam TD Acct 1237.**

73.     TD Bank records show that Hee Ah Nam TD Acct 2483 was opened on or about March 29, 2012.  The authorized signer on the account is Hee Ah Nam.

74. Nam told law enforcement that she did not conduct any large transactions in the numerous bank accounts held in her name, including, Hee Ah Nam TD Acct 1237, and that any transactions larger than $5,000 in Hee Ah Nam TD Acct 1237 would have been conducted by Choi.

75. This account received approximately $200,000 in proceeds of the PPP Loan Fraud Scheme from Hee Ah Nam TD Acct 2483. Prior to the incoming funds of approximately $200,000, the account had an approximate balance of $7,297.61, as of on or about May 4, 2020. The balance in Hee Ah Nam TD Acct 1237 on or about September 3, 2020, was approximately $210,517.24.

76. Because tainted funds from the PPP LLC Accounts were used to fund this account, the contents of this account are traceable to proceeds of the PPP Loan Scheme and are involved in money laundering. For these reasons, the contents of Hee Ah Nam TD Acct 1237 are forfeitable.

**vi.    Hee Ah Nam BofA Acct 6030.**

77. Bank of America records show that Hee Ah Nam BofA Acct 6030 was opened on or about May 14, 2020. The authorized signer on the account is Hee Ah Nam. This account was opened in order to facilitate the laundering of proceeds of the PPP loan fraud scheme.

78. Nam told law enforcement that she was not aware that Hee Ah Nam BofA Acct 6030 even existed prior to September 3, 2020.

79. This account was used to receive approximately $1,330,100 in PPP loan fraud proceeds from JCA Trust JPMC Acct 9483. Prior to the incoming

funds of approximately $1,330,100, the account had a balance of zero, as of May 14, 2020.  This account was primarily used to transfer proceeds of the PPP loan fraud scheme to Nam's personal bank and investment accounts and used to pay for personal and business credit cards.

80.     Between on or about June 1, 2020 and on or about July 27, 2020, a significant amount of the funds in Hee Ah Nam BofA Acct 6030 were transferred from Hee Ah Nam BofA Acct 6030 to Hee Ah Nam TDA Acct 2857 through a series of withdrawals totaling approximately $451,000 and transferred to Hee Ah Nam BofA Acct 6043 through a series of withdrawals totaling approximately $1,100,000.  A total of $420,000 was transferred from Hee Ah Nam BofA Acct 6043 back to Hee Ah Nam BofA Acct 6030, resulting in a net amount transferred of approximately $680,000.

81.     Between on or about May 19, 2020 and on or about July 30, 2020, Nam made approximately twenty-eight payments, totaling approximately $189,375 from Hee Ah Nam BofA Acct 6030, to business and personal credit cards.

82.     Between on or about August 5, 2020 through on or about August 19, 2020, a total of approximately $50,000 was transferred from Hee Ah Nam BofA Acct 6043 to Hee Ah Nam BofA Acct 6030 and subsequently used to pay business and personal credit cards.

83.     The balance in Hee Ah Nam BofA Acct 6030 on or about September 3, 2020, was approximately $16,980.18.

84.     Because tainted funds from the PPP LLC Accounts were used to fund this account, the contents of this account are traceable to proceeds of the PPP Loan Scheme and are involved in money laundering. For these reasons, the contents of Hee Ah Nam BofA Acct 6030 are forfeitable.

### vii.     Hee Ah Nam BofA Acct 6043.

85.     Bank of America records show that Hee Ah Nam BofA Acct 6043 was opened on or about May 14, 2020.  The authorized signer on the account is Hee Ah Nam.  This account was opened in order to facilitate the laundering of proceeds of the PPP loan fraud scheme.

86.     Nam told law enforcement that she was not aware that Hee Ah Nam BofA Acct 6043 even existed prior to September 3, 2020.

87.     This account received approximately $1,100,000 in PPP loan fraud proceeds from Hee Ah Nam BofA Acct 6030.  Prior to the incoming funds of approximately $1,100,000, Hee Ah Nam BofA Acct 6043 had an approximate balance of zero, as of May 14, 2020.  There were multiple transfers from Hee Ah Nam BofA Acct 6043 back to Hee Ah Nam BofA Acct 6030 totaling approximately $420,000 resulting in a net transferred amount of approximately $680,000.

88.     Between on or about August 5, 2020 and on or about August 19, 2020, a total of approximately $50,000 was transferred from Hee Ah Nam BofA Acct 6043 to Hee Ah Nam BofA Acct 6030.  The balance in Hee Ah Nam BofA Acct 6043 on or about September 3, 2020, was approximately $530,014.20.

89.     Because tainted funds from the PPP LLC Accounts were used to fund this account, the contents of this account are traceable to proceeds of the PPP Loan Scheme and are involved in money laundering. For these reasons, the contents of Hee Ah Nam BofA Acct 6043 are forfeitable.

**viii.    Hudson JPMC Acct 9900.**

90.     JP Morgan Chase Bank records show that Hudson JPMC Acct 9900 was opened on or about May 14, 2020.  The authorized signer on the account is Hee Ah Nam.  This account was opened in order to facilitate the laundering of proceeds of the PPP loan fraud scheme.

91.     Nam told law enforcement that she opened Hudson JPMC Acct 9900 at Choi's direction and did not conduct transactions related to Hudson JPMC Acct 9900 including issuing checks, depositing funds, and transferring monies.  Any transaction associated with Hudson JPMC Acct 9900 was conducted by Choi.  Nam also told law enforcement that she was not aware of any purchases or acquired assets of Hudson Asset Holding Corporation.

92.     This account was used to receive approximately $1,401,000 in PPP loan fraud proceeds from JCA Trust JPMC Acct 9483.  Prior to the incoming funds of approximately $1,401,000, the account had a balance of approximately $500, as of May 14, 2020.

93.     Between on or about May 14, 2020 and on or about May 29, 2020, a significant amount of the funds in Hudson JPMC Acct 9900 were subsequently transferred to Hudson JPMC Acct 4413 through a series of withdrawals totaling approximately $500,000.  Additionally, approximately

$687,748 was transferred to Blackstone Stewart Abstract via two outgoing wires:  approximately $300,000 on or about May 22, 2020, and approximately $387,748 on or about May 26, 2020.  The wires to Blackstone Stewart Abstract funded the purchase of the Cresskill Residence, which was placed in the name of Hudson Asset Holding Corp.

94.    Between on or about June 2, 2020 and on or about July 14, 2020, a total of approximately $32,058 was spent from Hudson JPMC Acct 9900, on expenses related to acquiring and improving the newly acquired Cresskill Residence.

95.    On or about August 21, 2020, approximately $350,000 was transferred from JCA Trust JPMC Acct 9483 to Hudson JPMC Acct 9900.  That same day, approximately $500,000 was transferred from Hudson JPMC Acct 9900 to Hudson JPMC Acct 4413.  The balance in Hudson JPMC Acct 9900 on or about September 3, 2020, was approximately $6,491.84.

96.    Because tainted funds from the PPP LLC Accounts were used to fund this account, the contents of this account are traceable to proceeds of the PPP Loan Scheme and are involved in money laundering. For these reasons, the contents of Hudson JPMC Acct 9900 are forfeitable.

**ix.    Hudson JPMC Acct 4413.**

97.    JP Morgan Chase Bank records show that Hudson JPMC Acct 9900 was opened on May 14, 2020.  The authorized signer on the account is Hee Ah Nam.  This account was opened in order to facilitate the laundering of proceeds of the PPP loan fraud scheme.

98.     Nam told law enforcement that she opened Hudson JPMC Acct 4413 at Choi's direction and did not conduct transactions related to Hudson JPMC Acct 4413 including issuing checks, depositing funds, and transferring monies.  According to Nam, any transaction associated with Hudson JPMC Acct 4413 was conducted by Choi.

99.     This account received approximately $1,000,000 in PPP loan fraud proceeds from Hudson JMPC Acct 9900.  Prior to the incoming funds of approximately $1,000,000, the account had an approximate balance of zero, as of May 14, 2020.  The balance in Hudson JPMC Acct 4413 on or about September 3, 2020, was approximately $980,052.09.

100.   Because tainted funds from the PPP LLC Accounts were used to fund this account, the contents of this account are traceable to proceeds of the PPP Loan Scheme and are involved in money laundering. For these reasons, the contents of Hudson JPMC Acct 4413 are forfeitable.

**x.     Virtua JPMC Acct 0353.**

101.   JP Morgan Chase Bank records show that Virtua JPMC Acct 0353 was opened on or about May 14, 2020.  The authorized signer on the account is Hee Ah Nam.  The signature card for this account listed Nam as the president of Virtua.  This account was opened in order to facilitate the laundering of proceeds of the PPP loan fraud scheme.

102.   Nam told law enforcement that although her name and social security number were on the account opening documents for Virtua JPMC Acct 0353, Nam was not knowledgeable about Virtua's business.  Furthermore, Nam

told law enforcement that she was not in fact president of Virtua.  Nam said that she had not conducted any large transactions in the accounts held by Virtua.  Nam told law enforcement that she was not involved in Virtua's business, and that Choi controlled the bank accounts held in the name of Virtua.

103.   This account was used to receive approximately $716,000 in PPP loan fraud proceeds from JCA Trust JPMC Acct 9483, approximately $3,300 from Smart Learning BofA Acct 4685, and approximately $2,000 from Hee Ah Nam JPMC Acct 0711.  Prior to the incoming funds of approximately $721,300, the account had a balance of approximately $100, as of May 14, 2020.

104.   Between on or about May 14, 2020 and on or about July 17, 2020, a significant amount of the funds in Virtua JPMC Acct 0353 was subsequently transferred to Virtua JPMC Acct 4827 through a series of withdrawals totaling approximately $300,000, as well as to Smart Learning BofA Acct 4685 through withdrawals totaling approximately $55,800.

105.   Between on or about May 15, 2020 and on or about July 22, 2020, approximately $242,591 from Virtua JPMC Acct 0353 was used to fund personal and business expenses.  The balance in Virtua JPMC Acct 0353 on or about September 3, 2020, was approximately $157,917.19.

106.   Because tainted funds from the PPP LLC Accounts were used to fund this account, the contents of this account are traceable to proceeds of the PPP Loan Scheme and are involved in money laundering. For these reasons, the contents of Virtua JPMC Acct 0353 are forfeitable.

**xi.  Virtua JPMC Acct 4827.**

107.  JP Morgan Chase Bank records show that Virtua JPMC Acct 4827 was opened on or about May 14, 2020.  The authorized signer on the account is Hee Ah Nam.  The signature card for this account listed Nam as the president of Virtua.  This account was opened in order to facilitate the laundering of proceeds of the PPP loan fraud scheme.

108.  Nam told law enforcement that although her name and social security number were on the account opening documents for Virtua JPMC Acct 4827, Nam was not knowledgeable about Virtua's business.  Furthermore, Nam told law enforcement that she was not in fact President of Virtua.  Nam said that she had not conducted any large transactions in the accounts held by Virtua. Nam told law enforcement that she was not involved in any of Virtua's business, and that Choi controlled the bank accounts held in the name of Virtua.

109.  Virtua JPMC Acct 4827 received approximately $300,000 in PPP loan fraud proceeds from Virtua JMPC Acct 9900.  Prior to the incoming funds of approximately $300,000, the account had an approximate balance of zero, as of May 14, 2020.  The balance in Virtua JPMC Acct 4827 on or about September 3, 2020 was approximately $300,036.39.

110.  Because tainted funds from the PPP LLC Accounts were used to fund this account, the contents of this account are traceable to proceeds of the PPP Loan Scheme and are involved in money laundering. For these reasons, the contents of Virtua JPMC Acct 4827 are forfeitable.

xii.    **Smart Learning BofA Acct 4685.**

111.   Bank of America records show that Smart Learning BofA Acct 4685 was opened on or about February 28, 2019.  The authorized signer on the account was Jae Choi, listed as President.  The bank opening documents indicate the account name as Smart Learning Inc. DBA Homeschool Buyers.

112.   This account was used to receive approximately $80,900 in PPP loan fraud proceeds from JCA Trust JPMC Acct 9483, approximately $640,000 from Smart Learning PNC Acct 1579, approximately $55,800 from Virtua JPMC Acct 0353, and approximately $1,200 from Educloud PNC Acct 0867.  Prior to the incoming funds of approximately $777,900, the account had an approximate balance of $8,445.89, as of April 22, 2020.

113.   Approximately $291,000 was transferred from Smart Learning BofA Acct 4685 to Blackstone Stewart Abstract via one outgoing wire in the amount of approximately $291,000 on May 4, 2020, which went toward the purchase of the Cresskill Residence.  Approximately $70,000 was transferred to JCA Trust JPMC Acct 9483 on or about May 6, 2020, and $3,300 was transferred from Smart Learning BofA Acct 4685 to Virtua JPMC Acct 0353 on or about May 28, 2020.

114.   Between on or about April 22, 2020 and on or about July 24, 2020, a total of $457,795 from Smart Learning BofA Acct 4685 was used to fund personal and business expenses, including approximately $181,501 in credit card payments.  The balance in Smart Learning BofA Acct 4685 on or about September 3, 2020, was approximately $32.06.

115.   Because tainted funds from the PPP LLC Accounts were used to fund this account, the contents of this account are traceable to proceeds of the PPP Loan Scheme and are involved in money laundering. For these reasons, the contents of Smart Learning BofA Acct 4685 are forfeitable.

### xiii.   Choi Laundered Funds Traceable to Proceeds of the PPP Fraud Scheme by Using Them to Fund a Brokerage Account Held in His Wife's Name— Hee Ah Nam TDA Acct 2857.

116.   TD Ameritrade records show that Hee Ah Nam TDA Acct 2857 was opened on or about May 12, 2020, and listed the account owner as Hee Ah Nam.  Listed under the new account information section was an email address Choi used to communicate with lenders about PPP loans.  This account was opened in order to facilitate the laundering of proceeds of the PPP loan fraud scheme.

117.   Nam was not aware that Hee Ah Nam TDA Acct 2857 even existed prior to September 3, 2020.  She also told law enforcement that she had not conducted any transactions in the account.

118.   Between on or about May 14, 2020 and on or about June 23, 2020, a total of $2,962,000 was deposited into Hee Ah Nam TDA Acct 2857. This account received approximately $2,511,000 in PPP loan fraud proceeds from Hee Ah Nam JPMC Acct 0711 and approximately $451,000 from Hee Ah Nam BofA Acct 6030.  Prior to the incoming funds of approximately $2,962,000, the account had an approximate balance of zero, as of on or about May 12, 2020.

119.  This account was used to buy and sell securities.  The value in Hee Ah Nam TDA Acct 2857 as of on or about August 26, 2022 was approximately $2,431,257.25

120.  Because tainted funds from the PPP LLC Accounts were used to fund this account, the contents of this account are traceable to proceeds of the PPP Loan Scheme and are involved in money laundering. For these reasons, the contents of Hee Ah Nam TDA Acct 2857 are forfeitable.

**C. Summary of Seizures from the Twelve Accounts.**

121.  On or about September 3, 2020, IRS executed seizure warrants for the twelve accounts at issue this in action. Below is a summary (Table III) of the contents of each of the twelve accounts at the time of seizure.

Table III:

| # | Bank Name | Account Name | Account Number | Account Balance at Time of Seizure |
|---|-----------|--------------|----------------|-----------------------------------|
| 1 | JP Morgan Chase | Jae Choi Attorney Trust Account | ■9483 | $ 1,369,748.16 |
| 2 | JP Morgan Chase | Hee Ah Nam | ■0711 | $ 201,870.82 |
| 3 | TD Bank | Hee Ah Nam | ■2483 | $ 662.44 |
| 4 | TD Bank | Hee Ah Nam | ■1237 | $ 210,517.24 |
| 5 | Bank of America | Hee Ah Nam | ■6030 | $ 16,980.18 |
| 6 | Bank of America | Hee Ah Nam | ■6043 | $ 530,014.20 |
| 7 | JP Morgan Chase | Hudson Asset Holding Corp | ■9900 | $ 6,491.84 |
| 8 | JP Morgan Chase | Hudson Asset Holding Corp | ■4413 | $ 980,052.09 |
| 9 | JP Morgan Chase | Virtua Education, Inc. | ■0353 | $ 157,917.19 |
| 10 | JP Morgan Chase | Virtua Education, Inc. | ■4827 | $ 300,036.39 |

| | | | | |
|---|---|---|---|---|
| 11 | Bank of America | Smart Learning, Inc. | ████4685 | $ 32.06 |
| 12 | TD Ameritrade | Hee Ah Nam | ████2857 | $ 3,074,690.00 |
| | | | | $ 6,849,012.61 |

**D. Choi Acquired a $970,000 Home in Cresskill, New Jersey Using Funds Traceable to Proceeds of the PPP Loan Scheme.**

122.   Bank records show that upon receiving PPP loan fraud proceeds, Choi used the proceeds to purchase the Cresskill Residence for approximately $970,000, and to pay for approximately $30,000 in improvements to the Cresskill Residence.

123.   On or about May 4, 2020, Choi transferred approximately $291,000 of the $640,000 First Home Bank PPP loan proceeds previously sent to Smart Learning BofA Acct 4685 to Blackstone Stewart Abstract, a title company located in Cinnaminson, New Jersey, to purchase the Cresskill Residence. In addition, between on or about May 15, 2020 and on or about May 22, 2020, Choi transferred approximately $950,000 from JCA Trust JPMC Acct 9483 to an account held in the name of Hudson Asset Holding Corp.  To complete the purchase of the Cresskill Residence, on or about May 22, 2020, approximately $300,000 from Hudson JPMC Acct 9900, and on or about May 26, 2020, approximately $387,748.45 from Hudson JPMC Acct 9900, were transferred in two wire transactions to Blackstone Stewart Abstract.

124.   Between on or about May 13, 2020 and on or about June 26, 2020, Choi used PPP loan proceeds from JCA Trust JPMC Acct 9483 and Hudson JPMC Acct 9900 to pay approximately $16,000 in architect fees.  On

or about June 29, 2020, Choi used approximately $2,250 from Hudson JPMC Acct 9900 to pay for landscaping design, which ultimately did not occur, for the Cresskill Residence. Finally, on or about July 14, 2020, Choi used approximately $12,000 from Hudson JPMC Acct 9900 to pay for remodeling costs for the Cresskill Residence.  Nam told law enforcement that she provided no monies for the purchase of the Cresskill Residence and that she did not sign any paperwork for the purchase of the Cresskill Residence.

## V.  <u>FIRST CLAIM FOR FORFEITURE</u>

125.   The allegations contained in paragraphs 1 through 124 of this Complaint are incorporated herein and made part hereof.

126.   The Defendants *in rem*, and all property traceable thereto, are subject to forfeiture as property constituting, or derived from, proceeds traceable to, bank fraud, in violation of 18 U.S.C. § 1344, and false statements to a financial institution, in violation of 18 U.S.C. § 1014.

127.   As a result of the foregoing, the Defendants *in rem* and all property traceable thereto are subject to condemnation and to forfeiture to the United States, in accordance with 18 U.S.C. § 981(a)(1)(C).

## VI.  <u>SECOND CLAIM FOR FORFEITURE</u>

128.   The allegations contained in paragraphs 1 through 124 of this Complaint are incorporated herein and made part hereof.

129.   The Defendants *in rem*, and all property traceable thereto, are subject to forfeiture as property involved in a transaction or attempted

transaction in violation of 18 U.S.C. §§ 1956 and/or 1957 or a conspiracy to commit such a violation, in violation of 18 U.S.C. § 1956(h).

130.   As a result of the foregoing, the Defendants *in rem* are subject to condemnation and to forfeiture to the United States, in accordance with 18 U.S.C. § 981(a)(1)(A).

WHEREFORE, the United States of America requests that the Clerk of the Court issue a warrant for the arrest and seizure of the Defendants *in rem* pursuant to Rule G(3)(b)(i) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions of the Federal Rules of Civil Procedure, which the plaintiff will execute upon the Defendants *in rem* pursuant to 28 U.S.C. § 1355(d) and Supplemental Rule G(3)(c); that notice of this action be given to all persons who reasonably appear to be potential claimants to the Defendants *in rem*; that the Defendants *in rem* be forfeited and condemned to the United States of America; that the plaintiff be awarded its costs and disbursements in this action; and that the Court grant such other and further relief it deems just and proper.

Dated:  Newark, New Jersey
         May 6, 2024

PHILIP R. SELLINGER
United States Attorney


*s/ Sarah Devlin*
By: Sarah Devlin
Assistant United States Attorney

## **VERIFICATION**

I, Frank Stryker, hereby verify and declare under penalty of perjury that I am a Special Agent with the United States Internal Revenue Service, that I have read the foregoing Verified Complaint for Forfeiture *in rem* and know the contents thereof, and that the matters contained in the Verified Complaint are true to the best of my own knowledge, information, and belief.

The sources of my knowledge and the grounds of my belief include the official files and records of the United States; information obtained directly by me; and information supplied to me from and by other law enforcement officials, during an investigation of alleged violations of Title 18 of the United States Code, Sections 1344, 1014, 1956, and/or 1957.

I hereby verify and declare under penalty of perjury that the foregoing is true and correct, pursuant to 28 U.S.C. § 1746.

Dated this _3___ day of May 2024.


*s/ Frank W. Stryker*_____
Frank W. Stryker, Special Agent
United States Internal Revenue Service